State *v.* Yeaton.

---

## STATE *versus* JOSHUA YEATON *& als.*

Requested instructions should be pertinent to the issue.

Therefore, in the trial of an indictment for an unlawful assembly and violently assaulting a member of a lyceum, at the door of a common school house, because he refused to let the defendants enter, the presiding Judge properly refused to instruct the jury that such member had no legal right to exclude the defendants from attending the lyceum, even though they were inhabitants of the district in which the school house was situate.

Also, the instruction, that the defendants had a legal right to use sufficient force to enter said school house for the purpose of attending the lyceum, when they attempted it, was properly refused.

ON EXCEPTIONS from *Nisi Prius*, BARROWS, J., presiding.

INDICTMENT.

The facts sufficiently appear in the opinion.

*J. J. Perry*, for the defendants.

*Peters, Attorney General, contra.*

BARROWS, J. —The defendants were indicted for an unlawful assembly and riotous assault. There was no material conflict of testimony. The facts were these. In the spring of 1864, a private school was in progress in the district school house at Norway village, under the tuition of G. F. Leonard, one of the principal witnesses for the prosecution, who, for some three years, had had the exclusive charge and control of the building which was used in spring and fall for private schools—in the winter for a common town school, and in the summer for both. The school had an accompaniment, common enough in New England, and eminently useful when conducted in an orderly manner, — a lyceum for public debates and discussions, in which both scholars and citizens participated, and which held its meetings in one of the rooms in the school house. Disorderly persons, two of the respondents being of the number, had created a disturbance at some of their meetings, and, thereafterwards, the lyceum voted to admit none to its meetings except the scholars and holders of tickets of admission. The managers of the lyceum issued tickets, and Joseph P. Packard and Wm. E. Frost, under their direction, were acting as doorkeepers at a regular meeting of the lyceum. The respondents, with their comrades, in all, six in number, went to the door for the alleged purpose of attending the lyceum. On being informed of the vote by Packard and Frost, they attempted to enter by force, one of them declaring with an oath that they wanted no tickets. Packard placed his hand against him for the purpose of holding him out, whereupon the party fell upon Packard and Frost and wounded both

severely by heavy blows upon the head with slungshots and stones, fracturing the skull of the former. Upon these uncontroverted facts, the defendants not even offering themselves to vary in the least the statements made by the government witnesses, their counsel contends *that*, inasmuch as they were inhabitants of the school district to which the school house belonged, the jury ought to have been instructed — 1, *that* Packard and Frost had no legal right to exclude them from attending a lyceum held in the house, and 2d, *that* they had a legal right to use sufficient force to enter said school house for the purpose of attending the meeting of the lyceum at the time they attempted to enter, or, more briefly, that the doorkeepers of the lyceum were in the wrong, and that defendants were justified in doing what they did; for, with all this violence, they did not succeed in effecting an entrance. They did create a great tumult. To the number of half a dozen, they, and their comrades, with loud oaths, dealt heavy blows with dangerous weapons, inflicting ghastly and terrible wounds — the provocation being a hand extended to oppose their entrance into a lawful and peaceable gathering, which, by formal vote, previously made known to them, had excluded all who had not received tickets of admission. Were they guilty of the offence charged? "If three or more persons assemble in a violent or tumultuous manner to do an unlawful act, or, being together, make any attempt or motion towards doing *a lawful* or unlawful *act in a violent, unlawful or tumultuous manner*, to the terror or disturbance of others, they shall be deemed guilty of an unlawful assembly." R. S. c. 123, § 2.

"It is not every assault that will justify every battery." 3 Greenl. Ev., § 64.

It is true that a man may justify the use of so much force as is necessary to defend the possession of his house, lands or goods, or his person from threatened violence, but it does not follow that he may lead a riot to dispossess those who are peaceably, even if unlawfully, in possession of his tenements or goods under a claim of right. If one of the defendants

had been the owner in fee simple and in severalty of the building occupied by the lyceum, all that Packard did in opposing the entrance of this party would not have justified the acts of the defendants. The substitution of law for brute force, in the maintenance of the rights of property, is one of the greatest triumphs of civilized society and good government.

The positions assumed by the defendants' counsel in argument are not only plainly in contravention of the first principles of christian morality, but utterly subversive of law, order and the peace of the community. If the first requested instruction had been correct as matter of law, it had no pertinency to the question at issue between the State and the defendants upon the facts proved, and the second is not law, but the essence of anarchy.          *Exceptions overruled.*

APPLETON, C. J., DAVIS, KENT, WALTON and DANFORTH, JJ., concurred.